United States District Court
Southern District of Texas
**ENTERED**
November 23, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VINCENT LEIGH ASHER,              §
                                  §
            Plaintiff,            §
                                  §
v.                                §      CIVIL ACTION NO. H-14-0661
                                  §
UNITED RECOVERY SYSTEMS, L.P.,    §
                                  §
            Defendant.            §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Vincent Leigh Asher, brings this action against defendant, United Recovery Systems, L.P. ("URS"), for violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111, et seq. ("ADA"), and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and for intentional infliction of emotional distress in violation of Texas common law.  Pending before the court are Defendant's Motion for Complete Summary Judgment ("Defendant's MSJ") (Docket Entry No. 16) and Plaintiff's Response to Defendant's Motion for Complete Summary Judgment ("Plaintiff's Response") (Docket Entry No. 19).  For the reasons set forth below, URS's motion for summary judgment will be granted and this action will be dismissed.

## I.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law

entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S. Ct. at 2553-2554 (emphasis in original)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing</u> <u>Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" <u>Id.</u> (quoting <u>Armstrong v.</u> <u>City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993)).

## II.  **Undisputed Facts**

URS is a collection agency with offices in Texas, Oklahoma, Arizona, and Kentucky that employs collectors who telephone consumers in an effort to recover debts owed to URS's clients.[1] URS and its collectors are required to abide by federal and state regulations governing communications with consumers including, <u>e.g.</u>, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et seq.</u>, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, <u>et seq.</u>  URS and its collectors must also abide by internal collection standards and the requirements of its clients, which include banks and credit card companies.[2]

---

[1]Declaration of Jacqueline Dee Berry ("Berry Declaration"), Exhibit A to Defendant's MSJ, Docket Entry No. 16-1, ¶¶ 2-3.

[2]Declaration of Keith Wayne Donovan ("Donovan Declaration"), Exhibit C to Defendant's MSJ, Docket Entry No. 16-3. ¶¶ 6-8.

URS hired Asher in August of 2008 to work as a collector at its office in Tulsa, Oklahoma.[3] Asher's job duties required her to telephone debtors in an effort to collect delinquent accounts.[4] Even though Asher had twenty years of experience in collections prior to working for URS,[5] URS trained Asher on proper collection procedures including regulations and client-specific requirements for the accounts she was assigned to work.[6]   Asher's training included the need to adhere to the following procedures during a collection call:  pull up the account and initiate the call; once answered, give the Quality Assurance Statement; identify herself as a caller for URS; verify the consumer's identity; give the Mini-Miranda Statement; and state the purpose of the call.  The Quality Assurance Statement informs the consumer that the call will be monitored or recorded; this statement is required in states that prohibit the recording or monitoring of calls without both parties' consent.  Verification prevents disclosure to a random person that a consumer owes a debt and is required by the FDCPA and many state debt collection laws.  The Mini-Miranda Statement is required by

---

[3]Plaintiff's Affidavit Concerning Her Testimony in Response to Defendant's Motion for Summary Judgment ("Plaintiff's Affidavit"), Exhibit M to Plaintiff's Response, Docket Entry No. 19-1, ¶ 6.

[4]Donovan Declaration, Docket Entry No. 16-3, ¶ 5.

[5]Deposition Excerpts from Vincent Leigh Asher Deposition March 23, 2015 ("Plaintiff's Deposition"), Exhibit D to Defendant's MSJ, Docket Entry No. 16-4, p. 26:11-15.

[6]Donovan Declaration, Docket Entry No. 16-3, ¶ 9.

the FDCPA to inform consumers that the call is from a debt collector, is an attempt to collect a debt, and that information obtained will be used for that purpose.[7]  URS collectors are also expected to demand the balance of the account, create a sense of urgency to pay, discuss the reasons for the balance, negotiate, gather information on the consumer's financial circumstances, discuss settlement, accept payment if payment is agreed upon, and provide a summary of the call.[8]  To keep calls flowing towards a positive outcome, URS maintains scripts for collectors to follow.[9]

In August of 2012 Asher transferred to URS's office in Houston, Texas,[10] where she was assigned to work on the Chase Bank account,[11] which was overseen by URS's Vice-President of Operations, Jacqueline Dee Berry ("Berry").[12]  Plaintiff's immediate supervisor was Frank McArthur ("McArthur"), who reported to Division Manager, Keith Wayne Donovan ("Donovan").[13]  Plaintiff normally worked 8-9

---

[7]Id. ¶ 10.

[8]Id. ¶ 11.

[9]Id. ¶¶ 12-13; Plaintiff's Deposition, Docket Entry No. 16-4, pp. 95:7-96:15.

[10]Plaintiff's Deposition, Docket Entry No. 16-4, p. 56:16-19; Plaintiff's Affidavit, Docket Entry No. 19-1, ¶ 9.

[11]Donovan Declaration, Docket Entry No. 16-3, ¶ 15.

[12]Berry Declaration, Docket Entry No. 16-1, ¶¶ 2 and 8.  See also Plaintiff's Deposition, Docket Entry No. 16-4, pp. 123:25-124:3.

[13]Donovan Declaration, Docket Entry No. 16-3, ¶ 3.

hours a day, but was neither prohibited nor discouraged from working more hours.[14]

In October 2012 plaintiff was involved in an automobile accident following which she applied for and received FMLA leave.[15] Plaintiff's application for FMLA leave was processed by URS's Human Resources Specialist, Gloria Jean Amos ("Amos").[16]

On January 7, 2013, Asher received her first Employee Warning Notice for having failed to provide a Quality Assurance Statement to a debtor.[17]  On March 8, 2013, Asher received counseling for being off-script.[18]  On March 11, 2013, Asher received another counseling for failing to properly verify the debtor and failing to give a Mini-Miranda statement.[19]  Asher also received an "in-house

---

[14]Id. ¶ 5.

[15]Declaration of Gloria Jean Amos ("Amos Declaration"), Exhibit B to Defendant's MSJ, Docket Entry No. 16-2, ¶ 8.  See also Exhibit 1 to Amos Declaration, Docket Entry No. 16-2, pp. 46-47, URS/Asher 00163-64 (October 26, 2012, letter from Gloria J. Amos to plaintiff stating, inter alia, "[d]ue to your own personal illness we are provisionally placing you on Family and Medical Leave effective October 22, 2012"; and Notice of Eligibility and Rights & Responsibilities dated 10/26/2012).

[16]Id. ¶¶ 2 and 7-8.  See also Plaintiff's Deposition, Docket Entry No. 16-4, p. 126:19-23.

[17]Employee Warning Notice, Exhibit 1 to Amos Declaration, Docket Entry No. 16-2, p. 42, URS/Asher 00123); Donovan Declaration, Docket Entry No. 16-3, ¶ 18; Plaintiff's Deposition, Docket Entry No. 16-4, p. 92:8-13.

[18]Donovan Declaration, Docket Entry No. 16-3, ¶ 18.  See also Exhibit 1 to Amos Declaration, Docket Entry No. 16-2, p. 40, URS/Asher 00121 (URS Compliance Issues Identification & Follow Up).

[19]Id.  See also Exhibit 1 to Amos Declaration, Docket Entry No. 16-2, pp. 36-39, URS/Asher 00116-00119 (Coaching Form).

suspension" that required her to attend an all-day refresher training course on collection compliance.[20]  On April 2, 2013, Asher failed to give Quality Assurance and Mini-Miranda statements, and as a result she was suspended from work from April 4, 2013, through April 9, 2013.[21]  When Asher returned to work on April 10, 2013, she received a Final Written Warning, which stated:  "Future violations of the FDCPA will result in termination."[22]

In April of 2013 Asher's son bought a house, and Asher aggravated her back bending over boxes packing and unpacking.[23]  On April 21-22, 2013, Asher missed work for two days because of her back pain.  On April 24, 2013, McArthur sent plaintiff an e-mail asking her to make up the 16 hours of work time that she missed on April 21-22, 2013, by the end of the pay period.  Plaintiff responded that

> [i]f I make up 16 hours by the end of this pay period, it would require me to work 4 hours Saturday, which I don't mind, 4 hours overtime tomorrow, which I know that I am physically incapable of, and working 12 hours, as well, on Monday and Tuesday.  Instead, I am requesting FMLA

---

[20]Id.  See also Exhibit 1 to Amos Declaration, Docket Entry No. 16-2, pp. 35-39, URS/Asher 00115-00119 (record of in-house suspension training and coaching form); and Plaintiff's Deposition, Docket Entry No. 16-4, pp. 105:11-108:3.

[21]Id.  See also Plaintiff's Deposition, Docket Entry No. 16-4, pp. 102:15-103:1.

[22]Id.  See also Berry Declaration, Docket Entry No. 16-1, ¶ 9, Exhibit 1 to Amos Declaration, Docket Entry No. 16-2, p. 34, URS/Asher 00114 (Employee Warning Notice); and Plaintiff's Deposition, Docket Entry No. 16-4, pp. 101:24-102:12.

[23]Plaintiff's Affidavit, Docket Entry No. 19-1, p. 7 ¶ 20.

paperwork, which I am certain my new specialist will agree to.[24]

On that day Asher requested FMLA paperwork from Amos.[25]  Asher left work early that day and the next day, April 25, 2013.[26]

On April 25, 2013, Asher visited PrimeCare Medical Group, and obtained a doctor's note stating that she would be able to return to work on April 26, 2013, without any restrictions.[27]  But Asher did not return to work until April 29, 2013, when she presented URS a doctor's note from the Richmond Bone & Joint Clinic stating that she was unable to work until April 29th.[28]

On May 1, 2013, Asher completed the paperwork needed to support her request for FMLA leave and provided URS a Certification of Health Care Provider for Employee's Serious Health Condition stating that "she cannot sit for more than 8-9 hours," that she suffers from "chronic back pain," and that she should work "no more

---

[24]Plaintiff's Deposition, Docket Entry No. 16-4, p. 126:7-13. See also Plaintiff's Affidavit, Docket Entry No. 19-1, p. 7 ¶ 20 (stating that after she took two days off in April of 2013 because of back pain, she got e-mails from Berry, who was trying to force her to make up lost time by working more than her regular hours).

[25]Amos Declaration, Docket Entry No. 16-2, ¶ 9; Exhibit 1 thereto, URS/Asher 00174-75 (Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act)) and 00176 (Designation Notice (Family and Medical Leave Act)).

[26]Amos Declaration, Docket Entry No. 16-2, ¶ 9.

[27]Id.  See also Exhibit 1 thereto, URS/Asher 00170 (PrimeCare Medical Group Return to Work form).

[28]Id.  See also Exhibit 1 thereto, URS/Asher 00183 (Letter from Richmond Bone & Joint Clinic signed by Fayyaz Ahmed MD).

than 9 hours per day."[29]  On May 2, 2013, URS granted plaintiff's request for FMLA leave.[30]

On May 3, 2013, an internal audit of collection calls being made by URS in preparation for an audit of URS's Chase account discovered a call that Asher had placed on April 29, 2013, in which she failed to provide the Quality Assurance Statement at the beginning of the call and gave the Mini-Miranda Statement before verifying the identity of the person with whom she was speaking, thus disclosing that she was calling about a debt before knowing with whom she was speaking.[31]  The errors made during the April 29, 2013, call occurred after Asher had received a Final Written Warning on April 10, 2013, admonishing her that future errors in violation of the FDCPA would result in termination.  The decision to discharge Asher was made by Berry in consultation with Donovan.[32]  On May 7, 2013, Donovan discharged Asher in McArthur's presence.[33]

---

[29]Id. ¶¶ 9-10.  See also Exhibit 1 thereto, URS/Asher 00180-81 (Part A: Medical Facts and Part B: Amount of Leave Needed).  See also Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act), Exhibit N to Plaintiff's Response ("Plaintiff's Response"), Docket Entry No. 19-2, pp. 2-5.

[30]Id. ¶ 9.  See also Exhibit 1 thereto, URS/Asher 00176 (Designation Notice); Berry Declaration, Docket Entry No. 16-1, ¶ 13.

[31]Donovan Declaration, Docket Entry No. 16-3, ¶ 19.  See also Plaintiff's Affidavit, Docket Entry No. 19-1, p. 6 ¶ 18 (acknowledging that constant pain caused her to make mistakes).

[32]Berry Declaration, Docket Entry No. 16-1, ¶ 9.

[33]Donovan Declaration, Docket Entry No. 16-3, ¶ 20.  See also Berry Declaration, Docket Entry No. 16-1, ¶ 9; Donovan Declaration, (continued...)

### III.   Analysis

URS argues that it is entitled to summary judgment on all of Asher's claims because Asher is unable to show that the legitimate, non-discriminatory reasons for which she was discharged were pretexts for disability-discrimination or retaliation for having sought FMLA benefits, and because any breakdown in the interactive effort to accommodate Asher's disability resulted from Asher's continued compliance errors while under a Final Written Warning. URS also argues that it is entitled to summary judgment on Asher's claim for intentional infliction of emotional distress because that claim fails as a matter of law.[34]   Asher argues that URS is not entitled to summary judgment on her ADA or FMLA claims, but concedes that her claim for intentional infliction of emotional distress is not actionable.[35]

### A.   URS is Entitled to Summary Judgment on Asher's FMLA Claim

Asher has asserted an FMLA interference claim.[36]   In support of this claim Asher alleges:

---

[33](...continued)
Docket Entry No. 16-3, ¶ 20; Plaintiff's Affidavit, Docket Entry No. 19-1, ¶ 22.

[34]Defendant's MSJ, Docket Entry No. 16, pp. 1-2.

[35]Plaintiff's Response, Docket Entry No. 19, pp. 1 and 9 ("Ms. Asher concedes that her Intentional Infliction of Emotional Distress claim is improper. . .").

[36]Id. at 1 ("Plaintiff asserts the claim[] of Family and Medical Leave Act ("FMLA") interference. . .").

50. Plaintiff has a cause of action under the Family Medical Leave Act. Plaintiff was already qualified under the act as her FMLA application was approved before her termination and plaintiff was granted rights by the act.  Section 2612(a)(1)(D) of 29 U.S.C. confers a right to persons to take up to 26 weeks of leave from work related to serious health conditions that render an employee unable to perform the job functions of the job position for the employer.

51. Defendant has violated plaintiff's FMLA rights by engaging in a prohibited act stated in section 2615(a) of 29 U.S.C.  The prohibited act was discharge of plaintiff from employment with defendant because plaintiff was unable to work the shifts demanded by defendant.[37]

URS argues that it is entitled to summary judgment on plaintiff's FMLA claim because Asher cannot show that URS interfered with her entitlement to FMLA rights or that URS would not have discharged her even if she had not exercised FMLA rights.[38]  Asher responds that "URS interfered with [her] rights and benefits that she was entitled to under FMLA by refusing to reinstate her upon her return from leave."[39]

1.  <u>Applicable Law</u>

The FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons without risk

---

[37]Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1, p. 7 ¶ 51.  <u>See also</u> Plaintiff's Response, Docket Entry No. 19, pp. 3-5.

[38]Defendant's MSJ, Docket Entry No. 16, pp. 1-2, 12-20.

[39]Plaintiff's Response, Docket Entry No. 19, p. 3.

of losing their employment.  See 29 U.S.C. § 2601(b).[40]  The FMLA

contains prescriptive and proscriptive provisions which, together,

seek both to accommodate the legitimate interests of employers and

to meet the needs of employees and their families.  See Hunt v.

Rapides Healthcare System, LLC, 277 F.3d 757, 763 (5th Cir. 2001).

Prescriptive provisions of the FMLA allow an eligible employee to

take up to twelve weeks of unpaid leave to care for herself if the

employee suffers from a serious health condition that makes the

employee unable to perform the functions of her position.  Id.

(citing 29 U.S.C. § 2612(a)(1)).[41]  At the conclusion of a qualified

leave period the employee is entitled to reinstatement to her

former position, or to an equivalent one, with the same terms and

benefits.  29 U.S.C. § 2614(a).  The proscriptive provisions of the

---

[40]The FMLA applies to private-sector employers with fifty or
more employees.  29 U.S.C. § 2611(4)(A)(i).  An employee who has
worked for a covered employer for at least 1250 hours during the
preceding twelve months is eligible for FMLA leave.  29 U.S.C.
§ 2611(2)(A).  URS does not dispute either that it is a covered
employer or that plaintiff was eligible for FMLA leave.

[41]29 U.S.C. § 2612(a)(1) provides in relevant part that

[A]n eligible employee shall be entitled to a total of 12
workweeks of leave during any 12-month period for one or
more of the following:

. . .

(D) Because of a serious health condition that makes the
employee unable to perform the functions of the position
of such employee.

FMLA appear in § 2615 and include two relevant categories of illegal behavior:

>   (1)   Exercise of rights
>
>   > It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
>   (2)   Discrimination
>
>   > It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).  The FMLA provides a private right of action against employers who violate its provisions.  29 U.S.C. § 2617(2). See Cuellar v. Keppel Amfels, L.L.C., 731 F.3d 342, 348-49 (5th Cir. 2013) (Elrod, J., concurring) (discussing substantive differences between FMLA claims based on allegations of interference with entitlement to FMLA leave and retaliation for having exercised FMLA rights, and observing that "[r]eview of the relevant caselaw reveals an underlying principle:  whatever they are called, claims that arise from the deprivation of an FMLA entitlement do not require a showing of discriminatory intent, whereas claims that arise from alleged retaliation for an employee's exercise of FMLA rights *do*").  Because Asher argues that URS interfered with her FMLA rights by refusing to reinstate her and instead discharging her when she sought to return to work, Asher's claims arise from the deprivation of an FMLA entitlement and, therefore, do not require a showing of discriminatory intent.

See id. at 347 (assuming that discriminatory intent is not an element of a claim brought under 29 U.S.C. § 2615(a)(1)).

2.   Application of the Law to the Undisputed Facts

To establish a claim of FMLA interference Asher must show that (1) she was an eligible employee, (2) URS is subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave URS proper notice of her intention to take FMLA leave, (5) URS interfered with the benefits to which she was entitled under the FMLA, and (6) she was prejudiced as a result. Lanier v. Univ. of Texas Southwestern Medical Center, 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam) (citing Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012)). See also Ragsdale v. Wolverine World Wide, Inc., 122 S. Ct. 1155, 1161 (2002) (recognizing that to succeed on a § 2615 claim a plaintiff must show that the defendant interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her). URS challenges only the fifth prong, i.e., whether Asher can show that URS interfered with FMLA benefits to which she was entitled.

An FMLA eligible employee is entitled to twelve weeks of unpaid leave within a twelve-month period if she suffers from a disabling health problem that precludes her ability to work. 29 U.S.C. § 2612(a)(1). Upon returning from such leave, the employee must generally be restored to the same or an equivalent position. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a). The right to

reinstatement is not absolute, however, and "[a]n employee is not entitled to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" Shirley v. Precision Castparts Corp., 726 F.3d 675, 681 (5th Cir. 2013) (quoting 29 U.S.C. § 2614(a)(3)(B)). See also 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). Accordingly, where the employer shows that "the employee would have lost [her] position even had [s]he not taken FMLA leave," no violation of the FMLA occurs. Id. at 682 (citing Grubb v. Southwest Airlines, 296 F. App'x 383, 391 (5th Cir. 2008) ("[A]t least for purposes of the FMLA . . . one can be fired for poor performance even if that performance is due to the same root cause as the need for leave."). "Thus, although denying an employee the reinstatement to which [s]he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment had *already been extinguished* — for legitimate reasons unrelated to [her] efforts to secure FMLA leave — does not violate the Act." Id. at See also Throneberry v. McGehee Desha County Hospital, 403 F.3d 972, 977 (8th Cir. 2005) ("[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.").

-15-

URS argues that it is entitled to summary judgment on Asher's FMLA interference claim because it did not interfere with any right to which Asher was entitled.  Asserting that Asher was not deterred from asking for FMLA leave, and that Ahser's request for FMLA leave was granted, URS argues that Asher is not able to cite any evidence capable of establishing that URS interfered with her exercise of FMLA rights.  Asserting that Asher was discharged for poor performance based on her history of repeated compliance errors, including errors that occurred after she was placed on Final Written Warning and admonished that any further errors would result in discharge, URS argues that "any allegation that URS did not grant an outstanding FMLA request at the time of her termination necessarily fails — [because] Ahser's performance issues were the basis for her termination."[42]  In other words, URS argues that Asher would have been discharged even had she not taken FMLA leave.  See Shirley, 726 F.3d at 682.

Asher does not dispute that she was placed on Final Written Warning on April 10, 2013, that when placed on Final Written Warning she was admonished that additional compliance errors would result in discharge, or that while on Final Written Warning she did, in fact, commit additional compliance errors.[43]  Instead, Asher cites her own affidavit as evidence capable of contradicting URS's

---

[42]Defendant's MSJ, Docket Entry No. 19, p. 14 n.5.

[43]Plaintiff's Deposition, Docket Entry No. 16-4, pp. 92-108.

argument that it would have discharged her for compliance errors even if she had not exercised her FMLA rights.  In pertinent part Asher states:

> 20.  . . . My FMLA was approved and I was placed on FMLA [leave] on May 2, 2015.  In the approval, Dr. Ahmed explained that I was allowed to take time off from work for up to two days each week, as needed because of back pain.

> 21.  On Friday, the 3rd of May, 2013, after I was approved for FMLA leave and after [URS] knew that I was approved for FMLA, Frank McArthur addressed an FDCPA violation that had happened over a week [earlier], . . . and told me that this couldn't happen again.  Monday morning, the 6th of May, I called Frank to let him know that my back hurt really bad and I had to stay in bed and wouldn't be at work that day.  He asked me if I thought that I could come in at noon and work the evening shift.  I told him that I doubted I would be better but he asked me to call him anyway and let him know. . . . I made sure to call again and talk to him personally to let him know that I would not be in that day.

> 22.  On Tuesday morning, the 7th of May . . . I was taken to a conference room where Keith Donovan fired me stating that it was for the FDCPA violation even though they had asked me to work for them after I had committed the violation.

> 23.  I had not expected to get fired because it was common for collectors to commit FDCPA violations all the time and not get fired for it.[44]

Asher's affidavit is not evidence from which a reasonable fact-finder could conclude that URS would not have discharged her had she not exercised her FMLA rights.  Asher does not dispute that she committed the compliance errors for which URS says it

---

[44]Plaintiff's Affidavit, Docket Entry No. 19-1, pp. 7-8 ¶¶ 20-23.

discharged her.  Instead, Asher argues: "If these violations were so egregious . . . why would URS have requested Ms. Asher to come into work after the final violation alleged was committed by her?"[45] Asher's testimony that her immediate supervisor — McArthur — asked her to work the day before she was discharged is not sufficient to raise a fact issue for trial because it does not contradict undisputed evidence that the decision to discharge her was made by URS's Vice-President of Operations, Berry, and not by McArthur. Asher's testimony that she did not expect to be discharged for compliance errors because other collectors commit similar compliance errors all the time without being discharged is not sufficient to raise a fact issue for trial because Asher fails to identify any collectors who were not discharged for committing comparable compliance errors after having been placed on Final Written Warning.  Nor has Asher proffered any evidence from which a reasonable fact-finder could conclude that her position at URS would have afforded her personal knowledge of compliance errors committed by other collectors.

In Shirley, 726 F.3d at 682-83, the Fifth Circuit stated

[t]hat an employee is not guaranteed an absolute right to reinstatement following a qualified absence is not only "a matter of common sense[,]" but also a principle reflected in this circuit's pattern jury instructions and in the opinions of a significant majority of other circuit courts.

--------

[45]Plaintiff's Response, Docket Entry No. 19, p. 4.

Id. at 682 & nn.33-34 (citing Fifth Circuit Pattern Jury Instructions (Civil) § 11.10.2(B)(8) (2009), and cases from the Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits (citations omitted)).  The Fifth Circuit explained that

> [i]t is true that an employer may not fail to reinstate an employee following his return from FMLA leave, *but only if the statutory requirements have been satisfied.* Among those requirements is one dictating that an employee must actually be entitled to the position to which he seeks reinstatement, 29 U.S.C. § 2614(a)(3); and an employer may challenge that entitlement by offering evidence that the employee would have lost his position even had he not taken FMLA leave, 29 C.F.R. § 825.216(a). Thus, although denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment had *already been extinguished* — for legitimate reasons unrelated to his efforts to secure FMLA leave — does not violate the Act.

Id.

To avoid summary judgment in this case Asher had to present evidence from which a reasonable fact-finder could conclude that URS would not have discharged her had she not exercised her FMLA rights.  Asher's evidence is not sufficient to defeat URS's motion for summary judgment on her FMLA interference claim because no reasonable fact-finder could conclude from her evidence that Asher was denied reinstatement and discharged for any reason other than URS's stated reason: her poor performance including compliance errors made during a collection call that occurred on April 29, 2013, that were discovered during an internal audit conducted on May 3, 2013.  Accordingly, the court concludes that URS is entitled to summary judgment on plaintiff's FMLA interference claim.

**B.   URS is Entitled to Summary Judgment on Asher's ADA Claim**

Asher has asserted an ADA claim for failure to provide reasonable accommodations.[46]   In support of this claim Asher alleges:

> 38.   Plaintiff has and had lower back pain that was only exacerbated by her car accident.  She had been under doctor's orders to not stress her lower back due to the uncomfortable, perpetual pain she was feeling.
>
> 39.   Plaintiff made defendant aware of her physical limitations that prevented her from working long hours on the phones for consecutive days in a conventional seated position.
>
> 40.   The entire time plaintiff had worked for defendant, she was in pain, but worked through it.
>
> 41.   Defendant through manager, Frank McArthur, demanded that plaintiff make up time she had missed due to her injuries and constant pain from her degenerative arthritis.  This demand was made on or around April 22, 2013.
>
> 42.   No accommodations were ever made or considered by defendant to plaintiff even though plaintiff requested accommodations as she experienced constant pain as she worked and experienced pain that prevented her from working as many hours as able bodied employees.
>
> 43.   Because of the demand to plaintiff to work more hours, plaintiff turned to HR manager, Gloria Amos and requested FMLA application materials.
>
> 44.   During the very end of April, 2013, plaintiff made her routine visit to Dr. Ahmed of the Richmond Bone and Joint Clinic.  Plaintiff explained that defendant had demanded she work 12 hours in a single day for consecutive days.

---

[46]_Id._ at 1 ("Plaintiff asserts the claim[] of . . . failure to provide reasonable accommodations under the . . . ("ADA") . . .).

45.  Dr. Ahmed was appalled upon hearing this.  He
     instructed plaintiff that she was not to work more
     than 8-9 hours a day and that she should take off
     for 1-2 days a week for back pain.

46.  Dr. Ahmed completed plaintiff's FMLA paperwork and
     she was immediately approved on or around the very
     beginning of May, 2013.

                         . . .

53.  Plaintiff has a cause of action under Americans
     with Disabilities Act of 1990, 42 U.S.C. section
     12101 et. seq.

                         . . .

56.  Plaintiff's degenerative arthritis and intense
     lower back pain qualifies as a disability under the
     act.  The lower back pain prevents plaintiff from
     engaging in major life activities.  Because of her
     pain, she is restricted from performing these
     activities.

57.  Plaintiff is a qualified individual under section
     12111 of the act.

58.  Defendant made no reasonable accommodations as
     defined under section 12111 of the act.  Defendant
     violated plaintiff's rights under the act by
     engaging in discrimination under the act as
     specified under section 12112 of the act.[47]

1.   <u>Applicable law</u>

     Discrimination under the ADA includes the failure to make

reasonable accommodations to the known physical limitations of an

otherwise qualified individual with a disability, unless

accommodation would impose an undue hardship on the employer.  42

U.S.C. § 12112(b)(5)(A).  A reasonable accommodation may include

---

[47]Complaint, Docket Entry No. 1, pp. 6-8, ¶¶ 38-46, 53, 56-58.

> job restructuring, part-time or modified work schedules,
> reassignment to a vacant position, acquisition or
> modification of equipment or devices, appropriate
> adjustment or modifications of examinations, training
> materials or policies, the provision of qualified readers
> or interpreters, and other similar accommodations for
> individuals with disabilities.

42 U.S.C. § 12111(9)(B).

> A plaintiff in this circuit "must prove the following
> statutory elements to prevail in a failure-to-accommodate
> claim: (1) the plaintiff is a '*qualified individual with
> a disability*;' (2) the disability and its consequential
> limitations were 'known' by the covered employer; and
> (3) the employer failed to make "reasonable
> accommodations" for such known limitations.

Neely v. PSEG Texas, Ltd. Partnership, 735 F.3d 242, 247 (5th Cir.

2013) (citing Feist v. Louisiana Department of Justice, Office of

the Attorney General, 730 F.3d 450, 452 (5th Cir. 2013)).

"'An employee who needs an accommodation because of a

disability has the responsibility of informing her employer.'"

Griffin, Sr. v. United Parcel Service, Inc., 661 F.3d 216, 224 (5th

Cir. 2011) (quoting EEOC v. Chevron Phillips Chem. Co., 570 F.3d

606, 621 (5th Cir. 2009)).  If the employee does so, "the employer

and the employee should engage in a flexible, interactive

discussion to determine the appropriate accommodation."   Id.

(citing EEOC v. Agro Distrib., 555 F.3d 462, 471 (5th Cir. 2009)).

While the employee has a right to a reasonable accommodation, the

right is not to her preferred accommodation.   Id.   "An employer

may not stymie the interactive process of identifying a reasonable

accommodation for an employee's disability by preemptively

terminating the employee before an accommodation can be considered

or recommended." Cutrera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 112 (5th Cir. 2005). But failure to participate in an interactive process does not alone constitute a violation of the ADA. See Picard v. St. Tammany Parish Hospital, 423 F. App'x 467, 470 (5th Cir. 2011) (per curiam) (rejecting argument that failure to engage in interactive process constitutes a per se violation of the ADA). "[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." Griffin, 661 F.3d at 224. "'[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.'" Id. (quoting Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999)).

2.   Application of the Law to the Undisputed Facts

URS does not dispute that Asher is a "qualified individual with a disability" within the meaning of the ADA.[48]   Instead, asserting that "Asher did not expressly request an accommodation

_____

[48]Defendant's MSJ, Docket Entry No. 16, p. 21 & n.7 ("even assuming Asher had an actual disability, Asher's disability discrimination claim still fails as a matter of law"). See also Plaintiff's Response, Docket Entry No. 19, p. 5 ("Ms. Asher meets this threshold because she testifies that she has debilitating back pain that is chronic back pain that substantially limits her ability to perform major life activities such as sitting, working, and household chores."); Plaintiff's Affidavit, Docket Entry No. 19-1, ¶¶ 3-4.

due to an alleged disability when she worked at URS,"[49] URS argues
that Asher's ADA failure-to-accommodate claim is subject to summary
judgment because "the breakdown in the process resulted from
Asher's own actions: her continued compliance violations while
under a Final Written Warning."[50]

Asher argues in response that URS's motion for summary
judgment on her failure-to-accommodate claim should be denied
because URS refused to provide reasonable accommodations that were
requested even after knowing the limitations of her disability.[51]
Citing ¶ 18 of her affidavit Asher argues that

> URS refused to accommodate [her] for her disability after
> she had requested the reasonable accommodation of
> schedule modification. . . URS did not even engage in the
> interactive process for this request. . . URS simply
> ignored Ms. Asher's request as it did not even address
> it.   There was a lack of good faith exhibited by URS.[52]

In ¶ 18 of her affidavit, Asher states in relevant part:

> Sometime in early 2013, I had asked Keith Donovan,
> Jacqueline Berry, and Frank MacArthur to be transferred
> to the analytics department.   I told them that I wanted
> to work in that department because they had a constant
> schedule from 9-5 or 8-5, every day.   My weekly work
> schedule consisted of me working a combination of very
> early shifts on some days and very late shifts on other
> days.   The combination of different shifts would greatly
> stress my back since on some days I would have to leave
> work late and have to arrive to work very early the next
> day . . . The time in between my shifts on these days was

---

[49]Id. at 10.

[50]Id. at 2.   See also id. at 25.

[51]Plaintiff's Response, Docket Entry No. 19, p. 6.

[52]Id. at 7.

far too short for me to get adequate time to rest my
back.  As a result, my back pain was made worse and
required even more time for me to get adequate rest . . .
The lack of adequate rest time between daily shifts made
my pain worse.  I had such a hard time concentrating on
my work because of the pain.  My pain was so great, at
times, that I made mistakes on the job.  That's why I
requested  that  I  be  transferred  to  the  analytics
department.  When [URS] refused to transfer me, I asked
if my schedule could be more uniform, working the same
times of the day for every day so that I could get enough
time to rest my back between daily shifts and so that I
would not have to endure consecutive shifts that made my
back pain worse and my recovery time, to relieve my pain,
longer.  I explained my need for enough back rest to
them.  I explained that a more uniform schedule of
working a set time every day would help relieve some of
my back pain.  But they, the managers I made the request
to, denied my request for a work schedule that would
better accommodate my back pain.  As a result, I had
increased back pain due to the lack of enough rest.  The
pain caused me to be distressed because it is very hard
to have to work while in pain . . . I could tough through
8-9 hours a day if I was given enough rest in between
daily shifts, before I was placed on FMLA leave.  I was
frustrated because [URS] never tried to accommodate me
for my pain . . . I felt like they wanted me to be in
constant pain so that I would continue to make mistakes.
If I wasn't in so much pain, I could better concentrate
on the rules that were constantly changing.[53]

Missing from Asher's presentation is any evidence that URS had

a job open in the analytics department or that she was qualified

for that job.  An employee seeking a reasonable accommodation bears

the burden of proving that an available position exists, that she

was qualified for the position, and that she could perform the

essential duties of that position.  Griffin, 661 F.3d at 224

(quoting Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir.

---

[53]Plaintiff's Affidavit, Docket Entry No. 19-1, pp. 5-6 ¶ 18.

2007)).   "'A disabled employee has no right . . . to choose what job to which [s]he will be assigned. . .'"   Id.

Asserting that "[s]chedule modification is deemed reasonable,"[54] Asher argues that when she was denied a transfer to the analytics department, she requested a uniform schedule pursuant to which she could work the same hours every day, but that URS also denied that request.[55]   In her affidavit Asher states that when she asked for a more uniform schedule she explained to her managers that such a schedule would help relieve her back pain, but Asher fails to cite any evidence showing that she tied her request for a more uniform schedule to a disability or to a limited ability to engage in any major life activities.   While undisputed evidence shows that Asher missed work due to back pain in October of 2012 and in April of 2013, since Asher attributes the back pain that she experienced in October of 2012 to injury suffered in an automobile accident and attributes the back pain that she experienced in April of 2013 to aggravation caused by bending to pack and unpack boxes, Asher has failed to cite any evidence from which a reasonable fact-finder could conclude that any complaints of back pain that she made to her URS managers before May 1, 2013, should have triggered notice of a disability.

The undisputed evidence shows that the only reasonable accommodation Asher sought after apprising URS that she suffered

---

[54]Plaintiff's Response, Docket Entry No. 19, p. 6.

[55]Id. at 7.

from chronic back pain that limited her ability to sit and work was
her request for intermittent FMLA Leave; a request that Asher
submitted on April 24, 2013, and URS granted on May 2, 2013.[56]
Because Asher has failed to present any evidence from which a
reasonable fact-finder could conclude that URS was aware or should
have been aware that she had a disability that limited any major
life activities at any time before she submitted her request for
FMLA leave on April 24, 2013, Asher's request for a more uniform
work schedule before then cannot be construed as an ADA request for
reasonable accommodation, and URS cannot be held liable for
violating the ADA by failing to grant such a request.  Because the
only request for accommodation that Asher made after she apprised
URS that she suffered from chronic back pain that limited her
ability to sit and work was a request for intermittent FMLA leave,
and because URS granted that request, URS cannot be held liable for
failing to reasonably accommodate Asher's disability.

Moreover, for the reasons stated in § III.A.2, above, the
court concludes that Asher has failed to cite any evidence from
which a reasonable fact-finder could conclude that once URS knew
that she suffered from chronic back pain, URS's failure to provide

---

[56]Charge of Discrimination, Exhibit 1 to Amos Declaration,
Docket Entry No. 16-2, URS/Asher 00191 ("On 4/24/2013, I made a
written request for accommodation to my manager, Frank McArthur.
I asked him to understand that I was unable to work 12 hours a day
due to arthritis back pain.").

her a reasonable accommodation resulted from URS's unwillingness to engage in a good faith interactive process and not from her own actions, i.e., her continued compliance errors while under a Final Written Warning that resulted in her discharge.[57]   Thus the court concludes that URS is entitled to summary judgment on Asher's claim that it failed to provide her a reasonable accommodation for a disability.

### IV. **Conclusions and Order**

Because Asher acknowledges that her claim for intentional infliction of emotional distress is not actionable and for the reasons explained above in § III, the court concludes that URS is entitled to summary judgment on Asher's claims for violation of the FMLA and the ADA, Defendant's Motion for Complete Summary Judgment (Docket Entry No. 16) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 23rd day of November, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[57]Defendant's MSJ, Docket Entry No. 16, p. 2.   See also id. at 25.

-28-